# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **BRANDON RANDALL FOWLKES,** | ) | **CASE NO. 7:19CV00182** |
| | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **HAROLD W. CLARKE,** | ) | **By: Hon. Glen E. Conrad** |
| | ) | **Senior United States District Judge** |
| **Respondent.** | ) | |

Petitioner Brandon Randall Fowlkes, a prisoner proceeding pro se, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his confinement under a 2015 judgment from the Pulaski County Circuit Court convicting him of grand larceny. The matter is presently before the court on the respondent's motion to dismiss and Fowlkes' response thereto, making the matter ripe for disposition. For the reasons set forth below, the court concludes that the respondent's motion to dismiss must be granted.

### I. BACKGROUND

#### A. Procedural History

On October 15, 2013, a Grand Jury impaneled for the Pulaski County Circuit Court issued indictments charging Fowlkes with grand larceny, felony hit-and-run, and misdemeanor hit-and-run. The matter was tried before a jury on November 13, 2014, after which the trial court granted motions to strike both hit-and-run indictments, but refused to strike the grand larceny charge. (R. 215–24.)[1] After deliberating, the jury found Fowlkes guilty of grand larceny and recommended a

---

[1] The Supreme Court of Virginia provided a consolidated record, pages numbered 1–694, containing most of the relevant pleadings, transcripts, and other incidents of the original trial, appeal, and state habeas case. Paper copies of this record are on file with the Clerk. Citations herein are to this Record, "R.," and the page numbers refer to the typewritten numbers in the lower left corner of the records.

sentence of nine years in prison. Following consideration of a presentence report, on February 9, 2015, the trial court imposed the nine-year sentence recommended by the jury. (R. 286–87.)

On February 26, 2015, Fowlkes filed a motion to vacate the conviction based on newly discovered evidence. (R. 301–02.) In particular, he provided an affidavit from Brandon Foutz, the other person arrested near the scene of the car accidents on October 15, 2013. (R. 303.) Foutz stated that he had been allowed into the auto impound lot the next day to see if his cell phone was in another car (other than the car Fowlkes was convicted of stealing). Fowlkes alleged that this showed access to the stolen car by "members of the public," who potentially contaminated the scene where Fowlkes' DNA was found. After hearing arguments of counsel, the trial court denied the motion on March 5, 2015. (R. 307.)

Fowlkes' counsel appealed his conviction and sentence to the Court of Appeals of Virginia. Along with his brief challenging the sufficiency of the evidence to convict Fowlkes and alleging error in the denial of his motion to vacate, counsel filed a motion to withdraw pursuant to Anders v. California, 386 U.S. 738 (1967). In his subsequent pro se petition allowed by the court, Fowlkes alleged that the trial court was biased against him and that his attorney was ineffective. (R. 253–67.) The Court of Appeals affirmed the judgment in an opinion dated March 17, 2016. (R. 19–22.) Fowlkes' petition for rehearing was denied April 12, 2016. (R. 319.)

Continuing pro se, Fowlkes then petitioned for appeal to the Supreme Court of Virginia, raising a single issue, that the Court of Appeals had erred in deciding his case without responding to the issues raised in his pro se petition. (R. 6–14.) The Supreme Court of Virginia refused his appeal on December 27, 2016 (R. 290) and denied rehearing on March 23, 2017. (R. 300.) Fowlkes then filed a habeas petition in the Supreme Court of Virginia on December 27, 2017, which the Court dismissed on October 9, 2018. (R. 540–53.) The Court then dismissed Fowlkes'

petition for rehearing on January 31, 2019. (R. 691.) The § 2254 petition currently before this court was received on February 20, 2019, with a certificate of posting in the institutional mail on February 15, 2019. (Pet. 84, ECF No. 1.)

B. Facts of the Case

The Court of Appeals of Virginia stated the evidence in the case in the light most favorable to the Commonwealth, the party prevailing at trial:

> [O]n February 27, 2013, Deputy Lucas Nester responded to the scene of an accident. He was informed that the occupants of the car had left the scene and were on foot in the area. As Nester neared the scene of the accident, he encountered two men walking. He identified them as [Fowlkes] and Brandon Foutz. Nester apprehended Foutz, but [Fowlkes] fled the scene.
>
> A short time later, the police received a call about another car accident nearby. Jeffrey Hubble's car had been stolen from his residence and was found crashed in a neighbor's yard a short distance away. The police impounded the car and found blood on the steering wheel. DNA testing linked the blood to [Fowlkes].
>
> Two days after the accidents, Nester served warrants on [Fowlkes] and noted he had a fresh cut on his left hand. Nester explained Foutz was in his custody at the time the second accident was reported.

(R. 20.)

The blood on the center of the steering wheel in the stolen car contained a DNA mixture from two individuals. Fowlkes could not be ruled out as the primary contributor to the mixture; according to the state's expert witness, the odds of the primary contributor being someone other than Fowlkes was less than one in 6.5 billion. (R. 197–99.) She further testified that the second contributor to the DNA mixture could not be identified, because she identified alleles from that contributor for only three chromosomes out of 15. (R. 205.) On a motion to strike the evidence, Fowlkes' attorney argued that the presence of genetic material from a second person in the car

created doubt about whether Fowlkes was the person who stole the car; he also argued that the blood could have been transferred from Fowlkes by another person injured in the original car accident with Fowlkes or from law enforcement personnel coming in contact with Foutz, who was also injured. The trial court disagreed with defense counsel's interpretation of the DNA evidence, denied the motion to strike, and allowed the case to go to the jury.

After jury instructions and closing arguments, the jury retired to deliberate. They were verbally instructed on the presumption of innocence and the Commonwealth's burden of proof on each element of the crime, and the trial court advised that they could find Fowlkes "guilty of grand larceny, guilty of petit larceny, or not guilty of anything. Those are your three choices." (R. 248.) However, the verdict form sent to the jury listed the following verdict choices:

> We the jury find the defendant guilty of Grand Larceny as charged
> in the indictment.
> _____
>              Foreman
> OR
>
> We the jury find the defendant guilty of Petit Larceny as charged in
> the indictment.
> _____
>              Foreman
> OR
>
> We the jury find the defendant guilty of Grand Larceny as charged
> in the indictment.
> _____
>              Foreman

(R. 299.) The third option should have been, "We find the defendant not guilty." At any rate, the jury foreman signed the top line, indicating that the verdict was guilty of grand larceny.

## C. Petitioner's Claims

Fowlkes raises the following claims for relief in his 94-page § 2254 petition, which are predominantly the same claims raised in his state habeas petition:

4

1. The trial judge was biased against Fowlkes, resulting in a violation of his due process right to a fair trial.  (Pet. 10–21, ECF No. 1.)

2. Fowlkes' conviction was based on insufficient evidence, in violation of his right to due process.  (Pet. 23–32.)

3. An improper jury verdict form violated Fowlkes' due process rights.  (Pet. 33–36.)

4. The trial court and the state's appellate courts violated Fowlkes' right to due process and fundamental fairness by denying his motion to vacate conviction and grant a new trial.  (Pet. 38–43.)

5. The trial court and the state's appellate courts denied Fowlkes the right to counsel by refusing to appoint new counsel for appeal.  (Pet. 44–48.)

6. The state denied Fowlkes' rights to due process and fundamental fairness by failing to provide Fowlkes a free copy of the trial court record in a timely manner.  (Pet. 50–53.)

7. The Court of Appeals of Virginia violated Fowlkes' right to due process by denying his appeal without addressing the arguments in his supplemental (pro se) petition for appeal.  (Pet. 54–59.)

8. Fowlkes' attorney provided ineffective assistance of counsel before, during, and after the trial and during appellate proceedings, by the following acts or omissions:

   a. The attorney filed untimely motions in limine.

   b. The attorney mentioned a "presumption of guilt" during jury selection.

   c. The attorney referred to the stolen vehicle as a "Mitsubishi" instead of a "Hyundai" during opening statements to the jury.

d. The attorney failed to ask the trial court to review the electronic record of testimony to correct the court's misunderstanding of the DNA evidence during the defense motion to strike.

e. The attorney failed to move for a mistrial.

f. The attorney failed to object to a defective verdict form which contained no option for finding the defendant "not guilty."

g. The attorney notified the trial court that he would be withdrawing from the case "due to anticipated Evidence," without notifying Fowlkes of this intent, breaching his duty of loyalty to Fowlkes and prejudicing the trial court against him.

h. The attorney was ineffective in handling the post-trial motion to vacate the judgment in the following ways:

   (i) Referring to the stolen vehicle as a "Mitsubishi" instead of as a "Hyundai";

   (ii) Failing to subpoena Brandon Foutz for the motion hearing held March 5, 2015; and

   (iii) Failing to order and file a transcript of the motion proceedings with the court as part of the appeal.

i. The attorney failed to schedule a date with the court to withdraw as counsel and have a new attorney appointed for the appeal.

j. The attorney failed to provide the transcript and file to Fowlkes in a timely manner for Fowlkes to pursue his appellate rights.

k. The attorney failed to present the meritorious issues for appeal that are the basis for claims 1, 3, 5, 6, and 8 of this § 2254 petition.

(Pet. 61–74.)

9. The trial court's sentence is constitutionally excessive. (Pet. 75.)

Having laid out the procedural history, the facts of the case, and the claims, the court will now discuss the legal issues pertaining to each claim.

## II. DISCUSSION

### A. Procedural Requirements

As amended by the Antiterrorism and Effective Death Penalty Act, federal statutes require state prisoners to meet several procedural requirements before a federal court may grant relief in habeas corpus. First, the petitioner must file his claim timely, generally within one year from the date on which the state court judgment became final. 28 U.S.C. § 2244(d)(1)(A). Second, he must exhaust his state court remedies before filing in federal court. 28 U.S.C. § 2254(b)(1)(A).

A federal <u>habeas</u> claim is timely if filed within one year from the "conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). However, the time "during which a properly filed application for State post-conviction" relief is pending shall not count towards the one year. 28 U.S.C. § 2244(d)(2). The respondent has not challenged the timeliness of Fowlkes' petition, and the court finds that his petition was timely.

To exhaust his claims, a petitioner must present his federal constitutional claims to the highest state court before he is entitled to seek federal <u>habeas</u> relief. <u>Baker v. Corcoran</u>, 220 F.3d 276, 288 (4th Cir. 2000) (citing 28 U.S.C. § 2254(b)(1); <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999)). The exhaustion mandate in § 2254(b)

> requires a federal habeas petitioner to provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim. It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made. In addition, the habeas petitioner must have "fairly presented" to the state courts the "substance" of his federal habeas corpus claim.

Anderson v. Harless, 459 U.S. 4, 6 (1982).[2]

If the petitioner has not presented a claim or part of a claim to the state courts, but he would clearly be barred by an independent and adequate state procedural rule from having that claim adjudicated now if he returned to state court, the claim is simultaneously exhausted and defaulted, that is, procedurally barred from federal habeas review. Bassette v. Thompson, 915 F.2d 932, 936 (4th Cir. 1990) (citing Teague v. Lane, 489 U.S. 288 (1989)). Even where the petitioner has completed his direct appeals and habeas remedies in the state courts, federal review of his § 2254 claims may be procedurally defaulted. If a state court expressly bases its dismissal of a claim on the petitioner's default of a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the federal habeas version of that claim is also procedurally barred. Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998).

### B. Analysis of Procedurally Defaulted Claims

The Supreme Court of Virginia dismissed Fowlkes' claims 1 through 6, a sub-part of claim 8(h), and claim 9 (A through F and I in the state court) on state procedural default grounds. That is, the state court found all claims defaulted except claim 8, ineffective assistance of counsel, and claim 7, the Court of Appeals' failure to consider claimant's issues. Fowlkes raised Claims 1, 2, and 4 in the Court of Appeals of Virginia, but he did not raise those issues in his appeal to the Supreme Court of Virginia. "Only assignments of error assigned in the petition for appeal" to the Supreme Court of Virginia will be addressed by the Court. Va. R. S. Ct. 5:17. When a petitioner has a right to raise an issue before the highest court of Virginia on his direct appeal, but fails to do so, he has no standing to raise that issue in state habeas corpus proceedings, as the issue has been

---

[2] The court has omitted internal quotation marks, alterations, and citations here and throughout this memorandum opinion, unless otherwise noted.

defaulted.  Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974).  The procedural default rule recognized under Parrigan is an independent and adequate ground for the state court's decision. Smith v. Murray, 477 U.S. 527, 533 (1986).  Therefore, these claims were defaulted under Parrigan as the state habeas court ruled.

Claims 3 and 9 were not raised in the trial court nor in either appellate court on direct appeal.  Therefore, those issues were defaulted under Parrigan, an independent and adequate ground for dismissal of these habeas claims, as the state court ruled.

Claims 5 and 6 allege error by the Court of Appeals of Virginia, but Fowlkes did not present either issue to the Supreme Court of Virginia on his direct appeal, as required by Va. R. S. Ct. 5:17.  Accordingly, these issues were procedurally defaulted, as the state habeas court ruled.

A federal habeas court may review the merits of a procedurally defaulted claim if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman v. Thompson, 501 U.S. 722, 750 (1991), holding modified on other grounds by Martinez v. Ryan, 566 U.S. 1 (2012).  Cause for default requires a showing of some impediment external to the defendant that prevented him from raising the claim. Id. at 757.  To show prejudice necessary to overcome procedural default, the petitioner must show that the error worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  United States v. Frady, 456 U.S. 152, 170 (1982).  To show a "fundamental miscarriage of justice," a petitioner has the burden of proving his actual innocence by demonstrating that more likely than not, no reasonable juror would have convicted him but for the constitutional error alleged.  Schlup v. Delo, 513 U.S. 298, 327, 329 (1995). The court will now address whether these exceptions apply.

1.  Cause

Fowlkes has argued that the cause for his procedural default of claims 1 through 6 and 9 is that the Court of Appeals of Virginia failed to rule on the claims and arguments he raised in his pro se petition for appeal, failed to rule on his motions for appointment of new counsel, and failed to enforce its Order for counsel to provide transcripts and pleadings to him. (Pet. 86–93.) Review of the record does not support Fowlkes' argument.

In its opinion of March 17, 2016, the Court of Appeals stated, "The Court has reviewed the petition for appeal, fully examined all of the proceedings, and determined the case to be wholly frivolous . . . ." (R. 19, emphasis added). This ruling indicates that the Court reviewed and denied each issue that Fowlkes raised, whether by counsel or in his pro se supplemental petition. Fowlkes' argument demonstrates his lack of understanding regarding his attorney's role and the role of the court when a motion to withdraw has been filed pursuant to Anders, 386 U.S. at 738. Even though Fowlkes' attorney filed a motion to withdraw, pursuant to Anders, he remained counsel for Fowlkes' appeal unless and until the court actually granted his motion. In his capacity as counsel, he was required to review the entire record and file a brief referencing any facts that would support the argued grounds for appeal. Id. at 744. Trial counsel did so. Thereafter, "the court—not counsel—then proceeds, after a full examination of the proceedings, to decide whether the case is wholly frivolous." Id. This consideration includes review of the points raised by the defendant in the time afforded to him for filing anything to supplement counsel's brief. Id.

An appellate court is not required to give reasons for its decision on every issue. A summary opinion without explanation, even a denial of certiorari, is still considered a decision on the merits in Virginia. Harward v. Commonwealth, 364 S.E.2d 511, 515 (Va. Ct. App. 1988). Nonetheless, the Court of Appeals of Virginia explained why the evidence was sufficient to

support the larceny conviction and why the trial court had not erred in denying the motion to vacate the conviction. (R. 19–22.) The Court of Appeals also stated that it had fully examined the record of the proceedings and found no error. Fowlkes has provided no reason that he could not have assigned the same errors in the Supreme Court of Virginia that he raised in the Court of Appeals.

To the extent that Fowlkes relies upon his lack of knowledge of the law and lack of an attorney, these circumstances do not constitute cause for procedural default of issues that were not appealed from the Court of Appeals to the Supreme Court of Virginia. First, that is not a circumstance external to the defendant. Second, the argument is not persuasive where, here, he argued claims 1, 2, and 4 (bias, sufficiency of the evidence, and denial of the motion to vacate because of newly discovered evidence) in his supplemental pro se petition in the Court of Appeals, and he has offered no reason for failing to make the same arguments in the higher court. Ignorance, mistake, or inadvertence of the defendant is analogous to similar mistakes of counsel in representing the defendant. A mistake of counsel resulting in procedural default at this stage would not be cause for default, as an attorney is the agent of the defendant, who is bound by the attorney's actions as though committed by himself. Procedural default by counsel is "cause" only if counsel's error rises to the level of constitutionally ineffective assistance of counsel. Murray v. Carrier, 477 U.S. 478, 492 (1986). Unless there is a right to court-appointed counsel at this stage, there can be no "constitutionally ineffective assistance of counsel." Coleman, 501 U.S. at 757. Once a defendant has had an appeal of right, there is no constitutional right to counsel on discretionary appeal to the next court. Ross v. Moffitt, 417 U.S. 600, 610 (1974). Fowlkes had his appeal of right in the Court of Appeals. Only after deciding that his appeal had no merit did the Court of Appeals permit counsel to withdraw and designate Fowlkes as pro se from that point forward. (R.

22.)  Fowlkes has offered nothing external to himself that precluded him from pursuing claims 1, 2, and 4 on direct appeal to the Supreme Court of Virginia.

Nor does Fowlkes fare better at showing cause for default on claims 5 and 6.  He alleges in claim 5 that the Court of Appeals failed to respond to his request for new counsel.  To the contrary, the record indicates that the Court of Appeals did not ignore his request for new counsel; rather, the Court denied the request.  In a letter to Fowlkes dated July 8, 2015, the Court advised him that trial counsel was still his attorney of record and accordingly, the Court would not appoint him new counsel at that time.  (R. 49.)  If Fowlkes wished to appeal that issue, he could and should have raised it as an assignment of error in his petition for appeal to the Supreme Court of Virginia.  He has failed to show cause for his failure to do so.

Claim 6 alleges that Fowlkes did not get a free copy of the trial record in a timely manner.  The record reveals that the Court of Appeals intervened to see that trial counsel forwarded a copy of the trial transcripts to Fowlkes.  While there was substantial delay, by October 6, 2015, Fowlkes acknowledged that he had received the trial transcripts.  (R. 325–327.)  In a letter to the Clerk of the Court of Appeals dated October 27, 2015, he confirmed that he had received transcripts of proceedings in chambers, two volumes of trial testimony, and the sentencing hearing.  (R. 329–30.)  The Court of Appeals gave him several continuances thereafter for filing his pro se brief, the final deadline ultimately being March 14, 2016, providing him ample time to review the transcript for errors he wished to raise.  (R. 364.)  Because he had these transcripts five months before filing his pro se brief in the Court of Appeals, he certainly had them to rely upon in preparing his petition to the Supreme Court of Virginia.  Further, to the extent he believed he was still missing portions of the trial record, he could have raised this issue as an assignment of error in his petition for appeal

to the Supreme Court of Virginia; he was certainly aware of what he thought he was missing, and he could have so stated. He has demonstrated no cause for failing to do so.

Fowlkes' remaining defaulted claims are claims 3 and 9. Claim 3 alleges an improper verdict form. By his own admission, he had a copy of the erroneous verdict form before his direct appeal. (Pet. 88.) His claim that he needed copies of the attorney's file to know whether the form was offered by his attorney or by the prosecuting attorney is not persuasive. He knew about the issue and could have raised the trial court's error in submitting the defective verdict form to the jury in his direct appeal, but he did not do so. Fowlkes presents no cause for failing to raise the issue of which he was aware. Likewise, he knew what his sentence was, and he could have challenged its "excessiveness" in his direct appeal. He did not need transcripts to do so, although he had the sentencing transcripts months before he filed his pro se brief. Accordingly, he has failed to show cause for default of claims 3 and 9.

2. Prejudice

Neither has Fowlkes demonstrated any prejudice as a result of defaulting the issues in these claims. Claim 1 alleges bias by the judge, apparently because the judge ruled against him on the motion to strike the evidence and because the judge partially misunderstood the DNA evidence. Ruling against the defendant is not, by itself, any indication of bias. See Liteky v. United States, 510 U.S. 540, 551 (1994) ("If the judge did not form judgments . . . he could never render decisions."). If it were, then bias would be claimed by the losing party after every trial. Further, Fowlkes' argument fails to reflect that two of the charges against him were dismissed on his motion to strike, which is inconsistent with his theory of bias. Finally, the trial judge's misunderstanding of the import of the DNA evidence from the defense perspective did not deprive Fowlkes of a fair trial. Whether the mixture of DNA evidence indisputably found in the stolen vehicle, when

combined with the other circumstantial evidence, warranted a finding of guilt beyond a reasonable doubt was a question for the jury to decide. Defense counsel remained free to argue the exculpatory value of the presence of other DNA to the jury; the trial court's rejection of the motion to strike had no bearing on counsel's ability to argue all evidence to the jury.[3] Thus, claim 1 was procedurally defaulted, and Fowlkes has not shown cause and actual prejudice to overcome this default.

Nor was Fowlkes prejudiced by the trial court's failure to strike the grand larceny charge for lack of evidence. The Supreme Court identified the proper legal standard for considering sufficiency of the evidence claims in Jackson v. Virginia, 443 U.S. 307 (1979). A federal habeas court can grant relief on such a claim only if the evidence at trial, in the light most favorable to the government, is such that no rational trier of fact could have found guilt beyond a reasonable doubt. Id. at 319, 324. Applying that standard, the court cannot say that no rational factfinder could find guilt from the following evidence before the court: Fowlkes was seen in the vicinity of the first accident, with injuries, but he ran from police and avoided apprehension at that time; shortly thereafter, police were advised of another accident nearby, involving a stolen vehicle; the stolen vehicle had a DNA mixture on the steering wheel, and the primary contributor of the DNA was consistent with Fowlkes' DNA, with the odds of the DNA coming from another source being 1 in 6.5 billion; and the minor contributor of DNA did not leave enough genetic material to be identified, as only 3 points out of 15 had an allele from a person other than the major contributor. On habeas review, the question is not whether the reviewing court or another jury might find a reasonable doubt based on the presence of other genetic material, but whether no rational person could find guilt from the facts asserted. Because Fowlkes cannot show that no rational person

---

[3] Closing arguments were not transcribed, but the court has no reason to believe from the record that counsel did not argue all available evidence to the jury.

would find guilt based on the facts, he has not been prejudiced by defaulting his sufficiency of the evidence claim. Thus, Fowlkes has failed to show cause and actual prejudice for his procedural default of claim 2.

The verdict form complained of in claim 3 carelessly omitted a "not guilty" option for the jury foreman to sign. That error does not end the prejudice inquiry, however. In looking at the record of proceedings as a whole, the court finds no actual prejudice in this case resulting from the verdict form. The jury was instructed that the Commonwealth had to prove each element of the crime beyond a reasonable doubt, and that if one element was not proved, the jurors "shall find the defendant not guilty." (R. 240–41.) The court instructed the jury that any reasonable doubt had to be resolved in favor of the defendant. (R. 241.) The court instructed the jury that reasonable doubt required that they find more than suspicion or probable guilt, however strong. (R. 245.) The trial court stated, "If you find that the Commonwealth has failed to prove beyond a reasonable doubt any one or more of the elements of the crime, then you shall find the defendant not guilty." (R. 246.) Finally, the court said that "the verdict form is the final form and I think it's pretty self-explanatory based on the instructions, your findings. . . . Just guilty of grand larceny, guilty of petit larceny, or not guilty of anything. Those are your three choices." (R. 248.)

The written jury instructions went to the jurors during deliberations as well as the verdict form. If the jury noticed the lack of a "not guilty" option on the verdict form, it is unlikely that the omission had any effect on their deliberations. Jurors had the option to convict Fowlkes of petit larceny, a lesser-included offense. The conviction establishes that they found all elements of grand larceny had been proved beyond a reasonable doubt, so they never reached the need for the other options. This case is comparable to Emmett v. Warden of Sussex I State Prison, 609 S.E.2d 602 (2005), in which the verdict form in the sentencing phase of a capital trial omitted the option

of "mandatory life" in prison if the government failed to prove either aggravating factor. The Supreme Court of Virginia found that the error was not structural and was not prejudicial, because the jury found that both aggravating factors were proved; then, given the choice between life and death, they imposed death. Id. at 607.

The Emmett court's reasoning applies here. The jury found that all elements of grand larceny were proved beyond a reasonable doubt and marked that option on the verdict form. Therefore, the jury had no reason to consider a not guilty option on the form. Further, the instructions regarding burden of proof and presumption of innocence were clear and straight-forward, and the jurors had been verbally advised of the options to convict of grand larceny, convict of petit larceny, or find not guilty. Thus, Fowlkes defaulted claim 3 and has shown neither cause nor actual prejudice to overcome the default.

Fowlkes cannot demonstrate prejudice from defaulting on claim 4 because the trial court committed no error in refusing to set aside the verdict on the grounds of new evidence. A party who seeks a new trial based on new evidence must establish that the evidence: (1) was discovered after the trial; (2) could not have been discovered in time for use at trial in the exercise of due diligence; (3) is not cumulative; and (4) is material, such as should produce a different result in another trial. Commonwealth v. Tweed, 570 S.E.2d 797, 800 (Va. 2002). In the motion to vacate his conviction, Fowlkes' attorney provided an affidavit from Foutz, indicating that he had been allowed into the secure impound lot to see if his phone had been left in the other car (not the stolen vehicle). The Court of Appeals of Virginia explicitly held that this proffered evidence failed to establish entitlement to a new trial.

Review of the record indicates that this decision was eminently reasonable. Foutz was at least an acquaintance of Fowlkes, as they were together during the first car accident. Fowlkes has

offered no legitimate reason that he could not have talked to Foutz during the more than one year between the accident and Fowlkes' trial. Further, the proffered evidence was cumulative, as Fowlkes had already established at trial that other people, including officers and the tow truck driver, had access to the stolen car the night of the accident before it was even impounded. The possibility of another person having access to the car a day later was not of such a magnitude that it was even remotely likely to produce a different result at trial. Fowlkes' defaulted sub-claim in claim 8(h) for ineffective assistance of counsel in failing to subpoena Foutz for the hearing on the motion to vacate his conviction results in no prejudice for the same reason, as the substance of Foutz' expected testimony had already been offered to the court.

Finally, whether to grant a new trial is a matter of state law, not federal or constitutional law, so this issue is not cognizable in a federal habeas court, even if there had been no default. Estelle v. McGuire, 502 U.S. 62, 67–68 (1991). A federal court may grant habeas relief "only on the grounds that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The state law standard for granting a new trial does not become a constitutional due process issue simply because a petitioner thinks it is unfair. Thus, Fowlkes has failed to show cause or actual prejudice to overcome his default of claim 4 and the subpart of claim 8(h) alleging failure to subpoena Foutz for the post-trial hearing.

Fowlkes has suffered no prejudice from defaulting claim 5 because he had counsel in the Court of Appeals of Virginia, and the Court reviewed the full trial record, looking for errors, and found none. Fowlkes points to nothing that a new attorney could have done for him that his lawyer had not already done in the Court of Appeals. Moreover, Fowlkes was not entitled to counsel on the next level discretionary appeal, once the Court of Appeals determined that no meritorious

issues appeared in the record.  See Anders, 386 U.S. 738; Ross, 417 U.S. at 610.  Again, Fowlkes has failed to show cause or actual prejudice to overcome his procedural default of claim 5.

Fowlkes has demonstrated no prejudice from defaulting claim 6, because he had the transcripts several months before his petition for appeal was due, and he had knowledge of the factual basis for each issue he wished to raise.  He has failed to demonstrate how having more copies of pages from the trial court's record would have prevented him from defaulting any of the issues he has raised in this petition.  Thus, he has failed to prove cause and actual prejudice to overcome the procedural default.

Likewise, Fowlkes cannot demonstrate prejudice from his default on claim 9, because the claim lacks merit.  Under Virginia Code § 19.2-295.1, felony jury trials are bifurcated into two phases, one in which the jury determines guilt or innocence, and the other, if the defendant is convicted, in which the jury determines the sentence.  The judge may choose to suspend or modify the jury's sentence, in his or her discretion, but if the judge modifies a defendant's sentence, he or she must file a statement of reasons for doing so.  Va. Code § 19.2-303; Jones v. Commonwealth, 795 S.E.2d 705, 711 (Va. 2017).  Once the jury fixes punishment, that punishment is the maximum sentence that may be imposed.  Thomas v. Commonwealth, 819 S.E.2d 437, 439 (Va. 2018).  Within these limits, a trial judge retains discretion in imposing a sentence on a defendant.  If the sentence does not exceed the maximum sentence that may be imposed, the sentence is not an abuse of discretion.  Abdo v. Commonwealth, 237 S.E.2d 900, 903 (Va. 1977).  Fowlkes' sentence did not exceed either the statutory maximum of 20 years or the jury sentence of nine years.

To challenge a sentence as constitutionally excessive, or disproportionate to the crime, he must show that the severity of the sentence is grossly disproportionate to the crime.  United States v. Cobler, 748 F.3d 570, 575 (4th Cir. 2014).  The Supreme Court has found a term-of-years

sentence grossly disproportionate only once, in <u>Solem v. Helm</u>, 463 U.S. 277 (1983). A nine-year sentence is not disproportionate for grand larceny of a car that the rightful owner had purchased for $2800 the prior year. <u>See Ewing v. California</u>, 538 U.S. 11 (2003) (upholding a 25-year sentence for theft of $1200 in merchandise) and <u>Lockyer v. Andrade</u>, 538 U.S. 63 (2003) (upholding a sentence on <u>habeas</u> review of two consecutive terms of 25 years to life for petty theft of videotapes worth $150). Because Fowlkes could not prevail on this claim, he suffered no prejudice from his default. Fowlkes has failed to established cause and prejudice to overcome his default of claim 9.

      3.  <u>Miscarriage of Justice</u>

Fowlkes has not alleged facts to support miscarriage of justice, nor could he establish this exception on the facts of this case. Having determined that a rational juror could find the evidence sufficient to support his conviction, the court finds little probability, if any, that the jury would not have convicted him if the alleged defaulted errors had not occurred. Thus, Fowlkes has failed to demonstrate that miscarriage of justice will occur if the court fails to consider his procedurally defaulted claims.

Fowlkes has failed to demonstrate miscarriage of justice, and the court has also found that Fowlkes has failed to show cause and prejudice on any of his defaulted claims. Therefore, the court will not consider the merits of claims 1, 2, 3, 4, 5, 6, or 9, or the defaulted subpart of claim 8, and the court will grant the respondent's motion to dismiss those claims.

      C.  Analysis of Claims 7 and 8 on the Merits

When reviewing a claim on the merits, the federal <u>habeas</u> court may grant relief on a claim considered by the state court only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A decision is contrary to federal law only if it reaches a legal conclusion that is directly opposite to a Supreme Court decision or if it reaches the opposite result from the Supreme Court on facts that are materially indistinguishable from the Supreme Court case's facts. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state's decision is an "unreasonable application" of federal law only if the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). The question is not whether a federal court believes the state court's decision is incorrect, but whether the decision was unreasonable, which is "a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007). Likewise, the federal court must presume that the state court's factual findings are correct, and this presumption can be overcome only "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Again, the federal court must find more than just an incorrect determination of facts, as "unreasonable determination of the facts" is "a substantially higher threshold." Schriro, 550 U.S. at 473.

1. Claim 7: The Court of Appeals Violated Fowlkes' Due Process Rights by Denying his Appeal Without Considering or Addressing his pro se Supplemental Petition for Appeal

The state habeas court did not address this claim, because the claim had been addressed on the merits on direct appeal to the state's highest court. Henry v. Warden, 576 S.E.2d 495 (Va. 2003). The claim is ripe for federal habeas review because it was presented to the state's highest court, giving the state an opportunity to address the issue. Although the Supreme Court of Virginia gave no reason for denying Fowlkes' appeal, it is "presumed that the state court adjudicated the claim on the merits, in the absence of any indication or state-law procedural principles to the

contrary." Harrington, 562 U.S. at 99. When a state court's decision is not accompanied by a written explanation, petitioner's burden under § 2254(d) must be met by showing that there was "no reasonable basis for the state court to deny relief." Id. at 98.

Fowlkes raised four matters in his pro se appeal petition to the Court of Appeals of Virginia: (1) sufficiency of the evidence, (2) denial of his post-trial motion to vacate the verdict based on newly discovered evidence, (3) bias of the trial court, and (4) ineffective assistance of counsel. (R. 253–267.) Notwithstanding Fowlkes claim to the contrary in the Supreme Court of Virginia, the Court of Appeals explained its decision on sufficiency of the evidence, and therefore, clearly considered and addressed this issue. (R. 19–21.) Likewise, the court explained why the "newly discovered" evidence did not entitle Fowlkes to a new trial. (R. 21–22.) Undoubtedly, the Supreme Court of Virginia saw no reason to explain why it was denying Fowlkes' claim that the Court of Appeals had "failed to consider or address these issues" when the appellate court's opinion clearly addressed them.

For the reasons stated earlier regarding the obvious lack of merit in Fowlkes' defaulted bias claim, there was no need for a written explanation of reasons for denying this claim, when the trial judge had dismissed two of the three charges against Fowlkes already. There simply was no evidence of bias, merely the judge's misunderstanding of the testimony about the DNA evidence. Finally, under well-settled law in Virginia, ineffective assistance of counsel can be raised for the first time only in state habeas proceedings. Blevins v. Commonwealth, 590 S.E.2d 365, 368 (Va. 2004).

For these reasons, Fowlkes has failed to show that there was "no reasonable basis" for the Supreme Court of Virginia to deny relief on the single claim raised in his direct appeal. Accordingly, the court will grant the respondent's motion to dismiss claim 7.

2.  Claim 8: Ineffective Assistance of Counsel

When reviewing defense counsel's performance, courts apply a highly deferential standard. A petitioner must show that (1) counsel's performance was so deficient that he was not functioning as counsel guaranteed by the Sixth Amendment and (2) that the deficient performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  Petitioner must meet both prongs of the test; deficiency alone is inadequate, as is prejudice without deficiency.  Deficient performance requires a showing that counsel's performance fell below "an objective standard of reasonableness . . . under prevailing professional norms."  Id. at 688.  The reviewing court must not rely upon "the distorting effects of hindsight," but must presume that counsel's decisions and actions fell within the wide range of reasonable strategy decisions.  Id. at 689–90.  Under Strickland, a reviewing court strongly presumes that counsel rendered adequate decisions and that all significant decisions were made in the exercise of reasonable judgment.  466 U.S. at 690.  The Strickland standard is "doubly deferential" in the context of a habeas petition, because the deferential standard of review required by § 2254(d) overlaps with the deferential standard under Strickland.  Woods v. Etherton, ___ U.S. ___, 136 S. Ct. 1149, 1151 (2016); Cullen v. Pinholster, 563 U.S. 170, 190 (2011).  In other words, federal courts on habeas review are to give the benefit of the doubt to both the state court and the defense attorney.  Woods, 136 S. Ct. at 1151.  Using this standard, the court will evaluate each alleged deficiency that Fowlkes raises against his attorney.

a.  Counsel filed untimely motions in limine

The state habeas court denied this claim on the grounds that Fowlkes failed to show any prejudice resulting from the late filing of the motions in limine.  (R. 542.)  Indeed, the trial court granted one of the motions, which sought to preclude the Commonwealth from introducing

probation violation revocations into evidence at sentencing. (Tr. of pre-trial motions, dated November 13, 2014, hereafter "Tr." at 6, ECF No. 1-2.) On the other motion, in addition to noting that the motion was untimely, the trial court said, "I don't think I can rule on the motion in limine . . . until I hear the evidence." (Tr. 11.) Based on the record, the <u>habeas</u> court was reasonable in determining that Fowlkes suffered no prejudice from the untimely motions.

### b. Counsel's reference to the "presumption of guilt" during voir dire

As the state court noted, counsel misspoke and then corrected himself. (R. 542.) The court further held that this mistake was not performance which fell below an objective standard of reasonableness. The court cannot find this ruling an unreasonable application of Supreme Court law. Reasonable performance does not require perfection on the part of counsel. A defendant is entitled to a fair trial, not a perfect one. <u>United States v. Hastings</u>, 461 U.S. 499, 508–09.

The state <u>habeas</u> court also held that Fowlkes suffered no prejudice from counsel's misstatement, because it was immediately corrected by the judge and by counsel himself. Further, the trial court later instructed the jury on the presumption of innocence and burden of proof. (R. 543.) The state court's decision is neither an unreasonable application of the law nor an unreasonable determination of facts.

### c. Counsel referred to the stolen car as a Mitsubishi instead of a Hyundai

Once again, the state <u>habeas</u> court held that counsel's misstatement constituted neither deficient performance, nor did the misstatement prejudice the defendant. (R. 543.) The court emphasized that both a Mitsubishi and a Hyundai, in the same neighborhood, had been involved in accidents in which the driver left the scene on the night in question. During opening statements, counsel accidentally referred to the stolen vehicle as a Mitsubishi one time, but correctly called the stolen vehicle a Hyundai several other times. The record confirms that the court's

determination of the facts was reasonable. On the same transcript page on which counsel accidentally referred to the car as a Mitsubishi, he made at least five different references to the car as a Hyundai. (R. 84.) For the same reasons mentioned in discussing counsel's misstatement during voir dire, the court was not unreasonable in applying <u>Strickland</u> by concluding that a single misstatement is not deficient performance. The state court also held that Fowlkes showed no prejudice resulting from the mistake. This also is a reasonable application of relevant law. Whether the car was a Hyundai or a Mitsubishi had no bearing on whether the defendant was the person who had stolen the vehicle. The state court's decision is neither an unreasonable application of the law nor an unreasonable determination of the facts.

d. <u>Counsel failed to direct the trial court to the record to review the DNA testimony</u>

The state court found neither deficient performance nor prejudice as to this claim. The court noted that defense counsel tried to convince the trial judge that the expert had testified that the DNA from the stolen car had genetic material from two contributors, but the judge disagreed, thinking that the different alleles had come from two parents of one person. The argument occurred during the defense motion to strike the evidence. In finding no deficient performance, the court stated that Fowlkes failed to offer any support for his suggestion that there was an immediately available record of the testimony for the court to review. (R. 544.) Upon review of the entire record, this court cannot find an unreasonable determination of the facts here.

More importantly, the state court determined that counsel could reasonably have decided not to pursue the argument further because there was sufficient evidence to send the matter to the jury whether or not the trial judge correctly recalled the DNA testimony. When a criminal defendant moves to strike the government's evidence in Virginia, the trial court:

> should resolve any reasonable doubt as to the sufficiency of the evidence in the [government's] favor and should grant the motion

> only when it is conclusively apparent that [the government] has proven no cause of action against defendant, or when it plainly appears that the trial court would be compelled to set aside any verdict found for the [government] as being without evidence to support it.

Avent v. Commonwealth, 688 S.E.2d 244, 257 (Va. 2010).  Whether or not the DNA supported the presence of another person in the stolen car, the evidence was clear that Fowlkes was the primary DNA contributor.  That evidence remained sufficient to create a jury question.  Accordingly, as a matter of strategy, defense counsel may have decided not to challenge the judge further.  Courts applying the Strickland standard are highly deferential to strategies of counsel, and Fowlkes has not overcome the presumption that counsel's decision not to argue the matter further was a reasonable tactical decision.

Likewise, the state habeas court held that Fowlkes was not prejudiced by counsel's failure to direct the trial judge to a record of the DNA expert's testimony, because the Commonwealth's evidence as a whole remained sufficient to create a jury question.  The state court's decision is neither an unreasonable determination of the facts nor an unreasonable application of the law.

e.  Counsel's failure to move for a mistrial

In finding neither deficient performance nor prejudice, the state habeas court held that counsel could reasonably have determined that moving for mistrial was futile under the high standard required for mistrial in Virginia.  LeVasseur v. Commonwealth, 304 S.E.2d 644, 657 (Va. 1983) (mistrial to be granted only if the defendant's rights have been "so indelibly prejudiced as to require a new trial").  The United States Court of Appeals for the Fourth Circuit has recognized that whether to move for mistrial is a tactical decision left to the sound discretion of counsel.  United States v. Chapman, 593 F.3d 365, 368–69 (4th Cir. 2010).  Accordingly, the state court's

decision is neither contrary to nor an unreasonable application of federal law, nor is the state court's decision an unreasonable determination of the facts.

      f.   Counsel's failure to object to the improper jury verdict form

The Supreme Court of Virginia addressed only the prejudice prong of this <u>Strickland</u> claim, which is appropriate, as the claim must fail if either prejudice or deficient performance is lacking. The state court relied upon the decision in <u>Emmett</u>, 609 S.E.2d at 602, to support its decision. <u>Emmett</u>, discussed earlier when considering whether Fowlkes has demonstrated prejudice to overcome default on the due process claim based on this verdict form, upheld a death sentence even though a jury instruction failed to include the option of sentencing the defendant to mandatory life if the government failed to prove either aggravating factor. The instruction did include, however, the option to impose either life or death if an aggravating factor were found. The jury found both aggravating factors were present and sentenced him to death. Because they found both aggravating factors present, the conditions under which mandatory life would be imposed never existed, and therefore, the defective jury verdict form did not prejudice the defendant.

Fowlkes has not identified, and the court has not found, any United States Supreme Court case addressing this particular issue of counsel failing to object to a defective jury verdict form. Accordingly, the court's decision cannot be contrary to nor an unreasonable application of federal law under § 2254(d). Likewise, the state court reasonably reached its factual conclusions that the jury was amply instructed on the burden of proof, presumption of innocence, and the obligation to find Fowlkes "not guilty" if the Commonwealth failed to prove each element beyond a reasonable doubt. The state court's decision on this claim was neither an unreasonable application of law nor an unreasonable determination of the facts.

g. Counsel notified the trial court of his intent to withdraw

Fowlkes contends that he had a conflict of interest with his attorney and that his attorney advised the court he intended to withdraw, without even telling Fowlkes about his plans. Fowlkes bases this allegation on a notation he saw in the state court clerk's notes that "Nichols is going to withdraw."[4] The record reflects that counsel never moved to withdraw until he filed his <u>Anders</u> brief in the Court of Appeals of Virginia. As the state <u>habeas</u> court noted, Fowlkes has not identified a conflict of interest, nor has he explained how any such conflict at trial impaired counsel's performance. (R. 547.) To establish ineffective assistance of counsel based on conflict of interest, a defendant must identify a potential conflict of interest that actually prejudiced the defendant or an actual conflict of interest that adversely affected the attorney's performance. <u>United States v. Cohan</u>, 798 F.3d 84, 88 (2d Cir. 2015). Fowlkes has not identified any conflict of interest, explained how he was prejudiced, or even established that his attorney ever told the trial court he was going to withdraw as counsel, nor has he explained any motive his counsel would have for telling the trial court he was going to withdraw.

Even if counsel had indicated an intent to withdraw, that intent does not establish a conflict of interest, as there are many reasons that counsel may need or wish to withdraw from a case. <u>See e.g.</u>, Va. R. Prof'l Responsibility, Rules 1.6(a), 1.9, 1.10, 1.16(b), & 3.7. Nor has Fowlkes explained in any way how he was prejudiced if counsel indicated an intent to withdraw. The state court's decision is neither an unreasonable determination of facts nor an unreasonable application of the law.

---

[4] In the trial court records from the Pulaski County Circuit Court, a notation appears on the second page of a form called "Pulaski County Circuit Court Jury Clerk Notes," dated November 13, 2014. The original form was apparently filled in by hand, with the names of the parties, attorneys, and Judge, and lists the witnesses and exhibits of each party. What appears to be a copy of a square post-it note affixed to the form, in the same handwriting, says, "Nichols is going to w/d Anticipated Evidence." Contrary to Fowlkes' interpretation, this note appears to relate to an exhibit (a map) that counsel was going to introduce into evidence, but he agreed to withdraw it because the Commonwealth had already introduced a copy of the same map, only smaller. (R. 123.)

h.  Ineffective performance of counsel in handling the post-trial motion to vacate

The portions of this claim that were presented to the Supreme Court of Virginia are that counsel referred to the stolen vehicle as a Mitsubishi in the post-trial motion and that he failed to obtain transcripts of the hearing on the post-trial motion.  As previously discussed with respect to the claim that counsel was ineffective for inadvertently referring to the car as a Mitsubishi one time during opening argument, the state court found neither deficient performance nor prejudice from counsel's mistake regarding the make of the stolen car.  The court's decision was neither an unreasonable application of federal law nor an unreasonable determination of facts.

As for counsel's failure to obtain transcripts of the post-trial motion hearing, the state habeas court found no deficient performance or prejudice.  The court noted that the record contained the transcript from the motion hearing and that other information was in the trial court record that enabled the Court of Appeals to rule on whether the trial court erred in denying the post-trial motion.  Nor did Fowlkes suffer any prejudice.  There were no witnesses at the hearing, just arguments of counsel, based on the new facts alleged in the motion and Foutz's affidavit.  As discussed in relation to Fowlkes' defaulted claim of error in denying the motion for new trial, the motion to vacate conviction and grant new trial did not allege facts sufficient to warrant a new trial under the standards set forth in Tweed, 570 S.E.2d at 800.  Fowlkes has not demonstrated any way in which the transcripts of the hearing could have changed the court's decision on the issue, especially since the transcripts are now part of the record.  The state habeas court's decision is not an unreasonable determination of facts nor an unreasonable application of federal law.

i.  Failing to schedule a hearing to appoint new counsel for Fowlkes

The state habeas court noted that Fowlkes' letter requesting appointment of new counsel was received on March 13, 2015, more than one month after Fowlkes had been sentenced and days

after Fowlkes' notice of appeal had been filed on March 9, 2015. Accordingly, the trial court no longer had jurisdiction to appoint a new attorney in the matter. Va. Sup. Ct. Rule 1:1 (a trial court's jurisdiction expires 21 days after entry of final judgment). Based on the timing of the motion, the habeas court found that counsel could reasonably have determined that scheduling a court appearance would be futile, and he did not perform deficiently. These findings are neither unreasonable determinations of fact, nor of law. The habeas court further found that Fowlkes demonstrated no prejudice and had not shown that there was anything that another attorney could have done that would have affected the outcome of his appeal. Again, the state court's findings were neither an unreasonable application of law nor an unreasonable determination of fact.

j.   Failing to provide timely copies of transcripts to Fowlkes

The Supreme Court of Virginia addressed only the prejudice prong of this habeas claim, finding that Fowlkes was not prejudiced by the delay in receiving the transcripts and trial record. The Court of Appeals granted him several extensions of time for filing his pro se supplemental petition, and he already had the information necessary to raise several of his appellate issues, including the defective jury verdict form. Once again, the state court's determination of facts is quite reasonable, and the court properly applied the Strickland test for prejudice.

k.   Failing to raise additional issues on appeal

The Supreme Court of Virginia found that Fowlkes was not prejudiced by counsel's failure to raise additional issues on appeal, including the alleged bias of the trial judge, the defective jury verdict form, the failure to obtain new counsel for Fowlkes, and ineffective assistance of counsel. When given the opportunity to file his pro se supplemental petition, Fowlkes added his claims of bias and ineffective assistance of counsel. He could have added the defective jury verdict form, but for some reason failed to do so. Likewise, he did not raise the failure to appoint new counsel.

The habeas court logically noted that counsel's failure to raise these issues was not the reason the issues were defaulted, because Fowlkes had the opportunity to raise them himself. The court's conclusions are reasonable determinations of the facts and law.

Although not discussed in the state habeas decision, this court notes that choosing which issues to pursue on appeal is an exercise of legal strategy, a function that falls to counsel, and as such, will rarely constitute deficient performance, as Strickland mandates deference to reasonable strategies of counsel. Even if counsel reasonably decides not to pursue a non-frivolous argument, in favor of one he thinks will be more successful, the court must respect counsel's strategy decision. Jones v. Barnes, 463 U.S. 745, 751–52 (1983). Further, Fowlkes would have to demonstrate that the unraised claims were clearly stronger than the ones raised, which he has not shown. See, e.g., Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (en banc). Thus, Fowlkes has failed to show that the state court's decision was an unreasonable application of law or an unreasonable determination of fact.

Fowlkes has failed to show that the state court's decision on any of the ineffective assistance of counsel allegations was an unreasonable application of federal law or an unreasonable determination of fact. Therefore, the court will dismiss claim 8 in its entirety.

### III. CONCLUSION

After careful review of the petition, the motion to dismiss, and pertinent parts of the state court records and decisions, the court concludes that the respondent's motion to dismiss must be granted. An appropriate order will issue this day.

**ENTER:** This 16th day of January, 2020.

_____
Senior United States District Judge